JOHN A. YOUNG ET AL. *v.* SOUTHERN RAILWAY COMPANY.

(Filed 15 November, 1911.)

1. **Objections and Exceptions—Former Testimony—Harmless Error.**
   When objection is made to the admissibility of evidence theretofore testified by the witness, without objection, the error in admitting it, if any committed, is without prejudice to the objecting party, and harmless.

2. **Carriers of Goods — Delayed Delivery — Reasonable Time—Consignee's Readiness—Negligence—Evidence.**
   When, in an action by the shipper against the carrier for damages to a shipment of fruit trees to his sales agent, alleged to have been caused by the carrier's negligence in an unreasonable delay in transportation and delivery, the defense is relied on that the plaintiff's agent was not ready to receive them when they arrived, it is competent for the plaintiff to show, in explanation why his agent did not wait for their arrival and upon the measure of damages, that orders had been obtained for the trees by traveling agents upon a salary, and they had been sold for a certain aggregate sum to various parties to be delivered when they called for them at destination upon notice at a certain time ; and, also, an order from one of plaintiff's customers requiring the trees to be delivered accordingly.

3. **Same—Instructions, Affirmative and Converse.**

An affirmative instruction on the facts in this case by the judge to the jury as to the duty of the consignee of goods in being ready to receive the consignment unreasonably delayed in transportation by the carrier, for which damages are sought, that if the plaintiff called for them within a reasonable time and made a reasonable effort to receive them if they reached there within a reasonable time, then he was not required to stay there until they came, unless he had some notice as to when they would arrive; that if he made a reasonable effort to get them, and they did not arrive within a reasonable time, and they were lost to him on that account, then he would be entitled to recover damages, but otherwise he would not be, is not objectionable for that the converse of the proposition was not charged, the words "but otherwise he would not be" being sufficient.

4. **Carriers of Goods — Negligence — Delayed Delivery—Consignee's Readiness—Issues, Relation of—Instructions.**

In an action for damages to a shipment of goods, alleging that they were caused by the failure of the carrier to transport them within a reasonable time, the first issue related to the reasonableness of the time of transportation, the second as to the injury caused thereby, and the third as to the amount of damages: *Held*, no error of the trial judge to instruct the jury in reference to the relations of the issues to each other, that if they answered the first issue "Yes," they should go to the next issue; and if they answered the second issue "Yes," they should find the damages under the third; and that if they should answer the first issue "No," they need not go further, but return their verdict.

5. **Carriers of Goods—Delayed Delivery—Measure of Damages—Instructions—Agreement of Counsel—Appeal and Error.**

In this action for damages alleged to have been caused by the negligence of defendant carrier in transporting a shipment of goods: *Held*, not error for the trial judge to omit to charge the jury upon the rule of the measure of damages, it appearing that the counsel for both parties had agreed on the trial, in the presence of the jury, and with the sanction of the court, that the damages should be the difference in value between the market price of the goods when delivered and the actual value of the damaged goods, should the defendant be held answerable.

APPEAL from *O. H. Allen, J.,* at August Term, 1911, of GUILFORD.

This is an action to recover damages for loss and injury to certain fruit trees and nursery stock, shipped over the line of the defendant and of connecting carriers. There were two shipments, one to Williamsburg, Va., and the other to Tappahannock, Va.

On 23 October, 1907, the plaintiffs delivered to the defendant three boxes of trees and other nursery stock, consigned to John A. Young's agent, to be shipped by freight to Williamsburg, Va., a station on the Chesapeake and Ohio Railway about fifty miles east of Richmond. The plaintiff did not pay the freight charges for transportation, but guaranteed it. The trees arrived at Williamsburg on 6 November, fourteen days after the date of the bill of lading. The plaintiff's agent having called for the trees at the station of the Chesapeake and Ohio Railway in Williamsburg on the 1st, 2d, 3d, 4th, and 5th of November, refused the shipment on the ground that they had been too long en route and were damaged.

Freight delivered at Greensboro to the Southern Railway Company for shipment to Williamsburg, Va., goes via Danville and Richmond over the Southern Railway Company; at Richmond it is transferred to the Chesapeake and Ohio Railway and goes over that road to Williamsburg. There is a car of freight from Greensboro to Richmond each day, but if freight is delivered at the station at Greensboro too late to take that train, it remains until the next day before it is forwarded. Danville is an intermediate point between Greensboro and Richmond, and freight for Williamsburg would have to be transferred at Danville; it would also have to be transferred at Richmond from the Southern Railway Company to the Chesapeake and Ohio.

The plaintiff had sold these trees for $908.08, and sued for that amount.

On 25 October, plaintiffs delivered to the defendant certain fruit trees and nursery stock consigned to John A. Young's agent for shipment by freight over its own and connecting lines to Tappahannock, Va., a town on the Rappahannock River, not on a railroad line. The trees arrived at Tappahannock on 12 November, eighteen days after the date of the bill of lading.

The plaintiff's agent called for them and accepted them, but found they were damaged so that about one-fourth were unfit for delivery. Plaintiff had sold the whole shipment for $287.17 and sued for $108.15 as the amount of his loss on account of the damaged trees. Freight from Greensboro for Tappahannock goes over the Southern Railway via Danville to Richmond; there it is transferred to the Richmond, Fredericksburg and Potomac Railroad, and is carried over that road to Fredericksburg; from there to Tappahannock the freight is carried by boat, which runs twice a week.

In making each of said shipments, the plaintiffs, in order to secure prompt service and delivery of the said freight so delivered to the defendant for shipment, paid to the defendant a higher rate of freight than it was necessary to pay if the plaintiffs had been willing to contract for the delivery of the freight to the defendant railway company marked "Released." By reason of the delay on the part of the defendants in the Tappahannock shipment, plaintiffs were put to an additional expense in delivering the goods of $108.52.

The shipment to Williamsburg was never delivered to the plaintiff, although the agents waited for it at Williamsburg until 5 November, at which time the defendant's agents would not advise them when the trees would arrive and they had no reason to expect that they would arrive on any certain subsequent date. The plaintiff having other engagements to meet other shipments in that territory, left Williamsburg on 5 November. When the trees did arrive, they were of no value whatsoever to the plaintiff, who was forced to fill his orders at Williamsburg by an extra order sent by express.

Freight shipped from Greensboro to Williamsburg was routed to Richmond, Va., one hundred and eighty or ninety (180-190) miles from Greensboro. A through car of freight from Greensboro to Richmond is made up each day, and freight loaded one day in Greensboro ought to reach Richmond the evening of the next day. The railroad company required the plaintiff to guarantee the payment of the freight on each of these shipments.

The following verdict was returned by the jury:

1. Did the defendant fail to transport the property of the plaintiff from Greensboro to Williamsburg, Va., within a reasonable time?   Answer: Yes.

2. Was the property of the plaintiff injured by reason of said failure of the defendant to transport within a reasonable time? Answer: Yes.

3. What damage, if any, has plaintiff sustained?   Answer: $908.08, without interest.

4. Did the defendant fail to transport the property of the plaintiff from Greensboro to Tappahannock, Va., within a reasonable time?   Answer: Yes.

5. Was the property of the plaintiff injured by reason of the failure of the defendant to transport said property within a reasonable time?   Answer: Yes.

6. What damages, if any, has plaintiff sustained?   Answer: $108.02, without interest.

Judgment was rendered thereon, and the defendant excepted and appealed.

*Justice & Broadhurst for plaintiff.*
*Wilson & Ferguson for defendant.*

ALLEN, J.   There are fourteen assignments of error, six of which relate to the rulings on the evidence, and of these, with possibly one exception, the same witness had, before the exception was taken, testified to the fact admitted or excluded, and therefore, if error was committed, which we do not find to be so, the defendant was not prejudiced thereby.

The assignment of error, which may be an exception, is to a part of the evidence of one of the plaintiffs, John A. Young. He testified, among other things, in reference to the Williamsburg shipment:  That he had orders from customers for both shipments; that the orders were obtained by traveling men on salary, with their expenses paid; that W. J. Thompson had interest in the money collected in both cases; that the goods shipped to Williamsburg had been sold for $908.08; that the interest would run from 2 November, 1907; that none of the Williamsburg shipment was delivered, and that he had a conversation with Mr. Devlin, the agent of the defendant, about

the shipment to Williamsburg, and told him that it had not arrived and asked him to look it up and that if he did not get it promptly in good condition that he would refuse the shipment, and he replied that he would have it looked up at once; that that was on the 2d or 3d day of November, 1907; and was then asked the following question:

Q. What date were your customers to be there to receive these goods?    A. At Williamsburg on 2 November.

We think this evidence was competent to meet one of the contentions of the defendant, that the plaintiffs were negligent in not being ready to receive the trees at Williamsburg, and particularly so as it introduced one of the orders for trees of a customer of the plaintiffs requiring the trees to be delivered at Williamsburg in October, November, or December, 1907, and notice to be given by mail of date of delivery.

The defendant also excepted to the following portions of the charge:

1. If the plaintiff called for them, called for them within a reasonable time and made a reasonable effort to receive them if they reached there within a reasonable time, then he was not required to stay there until they did come, unless he had some notice as to when they would arrive; but if he made a reasonable effort to get them, and they did not arrive within a reasonable time, and they were lost to him on that account, then he would be entitled to recover damages, but otherwise he would not be.

2. So if you answer the first issue and the fourth issue—that is, the issue as to the reasonable time—if you answer that "Yes," you will go to the next issue, "Was the property of the plaintiff injured by reason of said failure of the defendant to transport within a reasonable time?"    And if you answer that "Yes," you will go to the last issue and answer, "What damages, if any, has the plaintiff sustained?"    If you answer the first issue "No," you need not go any further, but return your verdict; and the same rule applies to the fourth, fifth, and sixth issues—that is, as to the Tappahannock shipment.

The criticism of the first part of the charge set out, as shown in the brief of the appellant, is "that his Honor should have

charged the jury that even, if the goods did not arrive within a reasonable time, it was the duty of the plaintiff to remain at Williamsburg a reasonable length of time, or to have made arrangements with some other person to receive and examine the goods when they did arrive, in order to mitigate, if possible, the damages. He should have further given to the jury the converse of the proposition, and stated that if the plaintiff did not call for the goods within a reasonable time and did not make a reasonable effort to receive them if they had reached there within a reasonable time, he would not be entitled to recover damages."

We think the converse of the affirmative charge was given in the language, "but otherwise he would not be," which can only mean that if the plaintiff did not call for the trees within a reasonable time and did not make a reasonable effort to receive them, the defendant would not be liable; and the charge also presents the view of the defendant, that it was the duty of the plaintiff to use reasonable effort to receive the trees.

We can see no possible objection to the other portion of the charge. It is no more than an explanation to the jury of the relation of the issues to each other.

The remaining assignments are to the failure to state to the jury any rule as to the measure of damages, and this would be fatal and would entitle the defendant to a new trial if it did not appear from the record that there was no controversy between the parties as to the true rule, and that they agreed in the presence of the jury, and with the sanction of the court, as to what it was.

The record states that during the trial, in the presence of the jury, when the plaintiff was offering evidence as to damages, the counsel for the defendant objected to the evidence and stated the rule as to damages to be the difference in value between the price at which the goods were sold, or rather the market price of the goods when delivered to defendant, and the actual value at the time they were alleged by plaintiff to have been damaged by the negligence of the defendant. The court stated that it so understood the rule as to damages, and thereupon the counsel for the plaintiff said he would agree that that

was the rule, and the court said, "Let that be understood," and the argument was conducted accordingly.

The jury could not have been misled when the agreement was made before them and the court said, "Let that be understood as the rule of damages."

Upon an examination of the record, we find

No error.